## CHRISTIAN LUTT
### v.
### JOHN B. GRIMONT.

1.  CHANCERY PRACTICE—APPOINTING RECEIVER.—In a creditor's bill filed on judgment and execution returned "*nulla bona*," the appointment of a receiver rests in the discretion of the court, and its determination of this question is conclusive in all collateral proceedings if enough appears on the face of the record to give the court power to act at all in the premises.

2.  RECEIVER—DEFENDANT MUST PAY MONEY TO, WHEN ORDERED.—Where a court orders a defendant in a suit to pay over money to the receiver therein, it is the plain duty of the defendant to yield a ready obedience to the order until such time as he can have it reviewed by an appellate tribunal upon appeal or writ of error.

3.  CHANCERY PRACTICE—REHEARING.—A court of equity may grant a rehearing upon good cause shown.

ERROR to the City Court of East St. Louis; the Hon. WILLIAM P. LAUNTZ, Judge, presiding. Opinion filed September 24, 1885.

August 16, 1883, John B. Grimont filed his bill in the court below, setting forth that one Nicholas Spannagel had been indebted to him for fifteen years prior to filing his bill, and that on the 10th of August, the complainant had obtained a judgment upon such indebtedness against said Nicholas; that execution had issued thereon and been returned *nulla bona*, the judgment still remaining in full force. That the said Nicholas, in 1871, formed a copartnership with plaintiff in error under the firm name of C. Lutt & Co., but for the pur-

Lutt v. Grimont.

pose of hindering and delaying complainant in the collection of such indebtedness the said Lutt and Spannagle agreed that said firm should consist ostensibly of said Lutt and Johanna Spannagel, wife of said Nicholas, while he should remain the real owner of the property and effects of said firm. That during the existence of said firm to June 1, 1883, the said Nicholas had conducted the business of said firm and had accumulated a large amount of property which was held by said firm as apparent owners, but which really belonged to said Nicholas.

That on June 1, 1883, for the purpose of still preventing complainant from collecting said debt, the said Johanna made a quitclaim deed of certain real estate held by said firm to John Spannagel, her son, and also executed a bill of sale to him of a half interest in the property and business of said firm, and that said John executed a declaration of trust that he held all the property thus acquired for the joint benefit of himself and his brothers and sisters.

The bill further charges that Lutt and said John entered into a copartnership for carrying on the business of said firm, and were conducting the same at time of exhibiting the bill.

Avers that all the conveyances and sales so made by Johanna were without consideration, and were a mere fraudulent scheme to keep said property from the creditors of said Nicholas, and that all the parties well knew that such was the only object in view.

Makes all said parties defendants to bill except said Johanna, who died in July, 1883, and prays for an injunction restraining them from incumbering or transferring any of said property held by said firm of C. Lutt & Co., and for the appointment of a receiver to take charge of and conduct such firm business until the interest of said Nicholas therein could be ascertained by the court and made subject to the payment of complainant's debt, etc., and for general relief.

Defendants, except said Nicholas, answered denying the material averments in the bill, and he answered admitting all its allegations to be true.

After the coming in of the answers, on motion of the complainant, the court, it then being in term time, appointed one

Henry Croisant receiver, to take charge of the property and
effects of the firm of C. Lutt & Co., who gave bond and en-
tered upon the discharge of his duties.  September 8th, at the
same term of court a hearing was had upon original and cross-
bills, answers thereto and proofs, and both bills were ordered
dismissed for want of equity, and that the receiver turn over
all the property in his possession to the defendants in the orig-
inal bill.  On the fourth Saturday of the same term the com-
plainant entered his motion for a rehearing in said cause and
for an order continuing the receiver until the further order of
the court, which order was made and the motion for a rehear-
ing continued until the next term.  On October 20, 1883, in
vacation, all the parties appeared before the judge, and by their
consent the judge ordered that the receiver be discharged as
far as the rights and property of Lutt was concerned, and that
Lutt be admitted into possession of the property as a partner
with the receiver in conducting the business, and that the re-
ceiver employ John Spannagel at a fair salary ; that Lutt be
consulted about the making of expenditures, and in case of
any disagreement between Lutt and the receiver, the matter
should be submitted to the judge for settlement and that all
parties proceed to ascertain the rights and interests of said
Lutt in the personal property of said firm with a view to the
dissolution of said firm and a division of the property.  At
the January term of said court, as appears from the supple-
mental record filed herein, the motion for a rehearing was
allowed, but as the clerk failed to record the order he was
directed on September 9, 1885, to enter such order of the date
of January 9, 1884.

At the March term, 1884, the complainant filed his petition
asking for an order upon Lutt to pay over to the receiver
$1,000, which he had collected from an insurance company
for the loss of an ice house which burned while in the
receiver's possession, and an order was made upon him to
report the amount received, and to pay the same to the re-
ceiver within three days after notice of the order.  Lutt ap-
peared in court at same term and moved to vacate the last
mentioned order, and the court, after a full hearing of the

matter overruled the motion, from which ruling Lutt prayed an appeal, but never perfected it. No attempt to enforce this order seems to have been made until the 29th of January, 1885, when an attachment was issued against him for contempt of court, returnable at the next term, at which time he could show cause why he should not be fined for such alleged contempt.

On May 7, 1885, the case was referred to the master to take testimony, and by agreement the master was required to ascertain the rights of all parties in interest. On May 8th, Lutt appeared in answer to the rule to show cause, and filed his answer thereto, which was adjudged by the court to be insufficient; but as Lutt had paid out for the firm all of the amount received over $612, the court announced that Lutt would have to comply with the order of April 14, 1884, and pay over the $612 to the receiver, and proposed to receive suggestions from counsel as to the time within which such sum should be paid, but Lutt, in open court, stated that he would not pay over the money to the receiver under any order then made or that had been made prior thereto. The court thereupon adjudged him guilty of contempt of court, and ordered him committed to the county jail until he pay said money to the receiver or he be otherwise discharged according to law. To reverse the order of commitment, Lutt sued out this writ of error.

Mr. J. M. Freels and Mr. B. H. Canby, for plaintiff in error.

Mr. M. Millard, for defendant in error.

Pillsbury, P. J. The errors assigned upon the record, question the jurisdiction of the court below in three particulars:

1st. In making the order appointing a receiver.

2d. In making the order of April 14, 1884, requiring Lutt to pay over the money to the receiver.

3d. In making the order of May 8, 1885, adjudging Lutt in contempt and committing him to jail.

It is urged in support of the first point that the bill is insufficient upon its face to authorize the appointment of a receiver, and especially should this not be done where, as in this case, the answer denies the equities of the bill.

Our statutes, § 49, Chancery Code of 1874, provide that "Whenever an execution shall have been issued against the property of a defendant, on a judgment at law or in equity, and shall have been returned unsatisfied in whole or in part, the party suing out such execution may file a bill in chancery against such defendant and any other person, to compel the discovery of any property or thing in action, belonging to the defendant, and of any property, money or thing in action due to him or held in trust for him, and to prevent the transfer of any such property, money or thing in action or the payment or delivery thereof to the defendant, except when such trust has in good faith been created by, or the fund so held in trust has proceeded from, some person other than the defendant himself. The court shall have power to compel such discovery, and to prevent such transfer, payment or delivery, and to decree satisfaction of the sum remaining due on such judgments, out of any personal property, money or things in action, belonging to the defendant or held in trust for him, with the exception above stated, which shall be discovered by the proceedings in chancery, whether the same were originally liable to be taken in execution at law or not."

Here is direct authority for the court to prevent a transfer of any property held in trust for the debtor, and empowers the court to employ any method consistent with the practice of courts of equity to accomplish such object. If, in the opinion of the court, a seizure of the property is necessary to the end that it should be forthcoming to answer the debt of complainant, this can be done by the appointment of a receiver, and indeed it is said " that in cases of creditor's bills where the return of the execution unsatisfied pre-supposes that the property of the defendant, if any he has, will be misapplied, and entitles the complainant to an injunction in the first instance, it seems to be almost a matter of course to appoint a receiver to collect and preserve the property pending the litigation." Bloodgood v. Clark, 4 Paige, 574.

So where a debtor makes a fraudulent assignment of his property for the purpose of hindering and delaying his creditors, receivers are frequently appointed in behalf of judgment creditors, and especially will the relief be granted in such case where the defendant continues in possession of the property and exercises acts of ownership over it. Cannah v. Sedgwick, 1 Barb. 210.

It was held in Gage v. Smith, 79 Ill. 219, that in cases of creditor's bills, the court had power to appoint a receiver, and that our statutes should be construed as liberally as that of the State of New York, from which it was adopted.

It is thus seen that in cases like the present ample power is conferred upon the court of chancery to appoint a receiver when in the judgment of that tribunal the case before it is a proper one for the exercise of such jurisdiction.

And whether the circumstances are such as to require the court, in the exercise of a wise judicial discretion, to act in the premises, must in the first instance be determined by itself, and its determination of this question is conclusive in all collateral proceedings if enough appears upon the face of the record to give the court power to act at all in the premises.

The facts alleged in the bill in the chancery cause are in our opinion sufficient to give the court jurisdiction to act upon the prayer of the bill asking for the appointment of a receiver, but whether, upon the motion to appoint one over the answer of the defendants, the proof was such as to justify the court in granting the motion, we have no means of knowing, and it is not material we should, for although the court may have committed error in that regard we can not correct it in this proceeding.

The court having acquired jurisdiction to act in the matter, its action can not be reviewed upon this writ of error.

It is claimed in support of the second assignment of errors, that the cause was finally disposed of by the order dismissing the bill entered Sept. 8, 1883, upon a hearing upon the merits, and no further proceedings could be had in the cause, and that the order of April 14, 1884, was made without notice to Lutt, and was therefore void. Had the court adjourned for the

August term without making any further order in the cause, the decree would undoubtedly have been final and the result contended for would have followed, but at the same term of court the complainant entered his motion for a rehearing of the cause, and the motion was continued to the next term, and an order entered continuing the receiver in the discharge of his duties until the further order of the court.

What effect did these orders have upon the jurisdiction of the court over the cause?

What the petition contained upon which the motion for a rehearing was based does not appear in the record, but we must presume it was sufficient to call upon the court to further consider it, and to make the order continuing its hearing to the next term, and to retain its control over the property then in the hands of its receiver. The practice of courts of equity to grant rehearings of causes before them upon a proper case being presented, has prevailed from the earliest times. Indeed, it was considered the proper practice in England to set a cause down for a rehearing whenever two counsel should sign the petition and certify that the cause ought to be reheard, (Ambler's Rep. 91,) and that it was a matter of course to rehear the cause upon such petition; and it was not considered improper practice to order a second or even a third rehearing, if sufficient cause be shown as in the case of Porter and Hubert, 3 Chan. Rep. 78, where the decree was made by a judge sitting in place of the lord keeper who, upon petition, reheard the cause himself, and there was afterward a second rehearing before the chancellor assisted by the judges. So in the case of Parker v. Dee, 2 Chan. Cas. 210, a decree was entered at the rolls and defendant appealed to the lord keeper, who entered a decree and another hearing was allowed upon plaintiff's petition and the cause was heard by the chancellor, assisted by a judge; and a decree being entered different from both of the other decrees, the complainant prayed for and obtained another rehearing. So it was held in Land v. Wickam, 1 Paige, 256, that where a decree of one chancellor is reversed by his successor in office, a rehearing will be granted by a third chancellor upon cause shown.

Lutt v. Grimont.

It is said in Daniels v. Mitchell, 1 Story, 198, that rehearings in equity after a decree are not matter of right, but rest in the sound discretion of the court. No reason is perceived why a judge of a circuit court in this State sitting as chancellor in determining issues between parties litigant upon the equity side of the court, should not possess as much power to correct errors of law or fact committed by him in the decision made in the cause, as were possessed by the courts of equity in England and in those States, as in New York, where the courts of chancery were organized as independent tribunals having equitable jurisdiction only, and entirely separated from courts of law. Indeed it must be conceded that in those courts presided over by men specially trained in the principles of equity jurisdiction, and who had made the application of those principles to the ordinary affairs of life the special business of their lives, the liability to mistakes or error was far less than it can be with us, where the chancellor can not give that time and attention to the study of the science of equitable law, essential to any reasonab'e degree of perfection in it, as here he is required alike to enforce the common law remedies, and the criminal code of the State, and is expected to be as well versed in those branches of the law as in the other.

When trying causes upon the common law side of the court, and error is committed to the prejudice of a party to the cause, such party has the right to demand that such error shall be corrected by the granting of a new trial, and it seems to me that it would be a reproach to the administration of justice upon the equity side of the court to deny to a chancellor the same power under the rules and practices governing such courts as are possessed by the common law courts, in correcting errors that may occur upon the trial or in the final decision of the cause.

It was held in Hibbard v. Mueller, 86 Ill. 256, followed by Hearson v. Grandine, 87 Ill. 115, that where a judgment was entered at one term of court and during the same term a motion was made to set it aside, and the cause continued without action upon the motion, the court retained jurisdiction of the

cause and could set aside the judgment at a subsequent term. These cases overrule the case of National Insurance Company v. Chamber of Commerce, 69 Ill. 22, referred to as holding a contrary view. If we are right in holding that the court below had power to grant a rehearing of the cause, then the entry of the motion for a rehearing of the cause at the same term of court, the entertaining of the motion by the court and the continuance of the cause, would, applying the principles of the above cited cases to the facts of this case, have the effect of retaining the cause in court and give the court as full and complete jurisdiction to pass upon the question at the next term as it had during the preceding one.

It is said, however, that Lutt had no notice of the entry of this motion; whether this be so does not appear from this record, but it is conclusively shown by the vacation order of Oct. 20th, entered by his consent, that at that time he knew of the motion and of the order retaining the receiver, and consented to act jointly with the receiver in the conduct of the business, and this order was made before any action had been or could be taken by the court upon the motion for a rehearing. He then knew that the court still claimed jurisdiction of the subject-matter and of the parties, at least so far as to protect the receiver in the performance of his duties under the order retaining him, and it is but fair to presume he ascertained upon what ground this claimed jurisdiction was based.

At the next term, as shown by the supplemental record, the court awarded a rehearing of the cause, and we must presume, in absence of averment in the record to the contrary, that Lutt was present and knew the order had been made, or if not, he knew the motion was pending and it was his duty to be advised of what action the court would take in the premises, and if he failed to do so, no one is to blame but himself. It is further urged that the order of April 14, 1884, requiring Lutt to pay over the insurance money, was void as being made without notice. Regarding the alleged want of notice, it is to be remembered that on the 18th day of the same month, after notice of the order, he appeared before the court and moved for a vacation of that order and after a full hearing by him-

Lutt v. Grimont.

self and counsel his application was refused, from which he appealed, but neglected to file bond and perfect it. This action of the court was equivalent to a confirmation of the order after full hearing, for it is not to be presumed that if the order was improperly or unadvisedly entered, the court would for a moment hesitate to set it aside. It became then the plain duty of the plaintiff in error to obey the order of the court in the premises, or question the action of the court in some legitimate manner; but neglecting to obtain a modification or reversal of the order, the same remained in full force against him and became a valid foundation for the subsequent proceedings, culminating in the order for his commitment.

As he did not obey the order, the court, upon being advised of such neglect, in January, 1885, issued its writ of attachment, making it returnable at the next term, and calling upon him to show cause for such disobedience. He appeared and again attacked the various orders made in the cause for error committed, and for want of jurisdiction, questions which had already been made and decided against him, and upon being told by the court that he must comply with the order, after allowing him a credit for the amount he had paid for the firm, he informed the court that he would not obey that order or any that might be made in the premises. This was a contempt in the presence of the court, and he was not entitled to any further indulgence of the court in the way of rules to show cause, for he stood in open defiance of the court after he had attempted to show cause upon two different occasions, and had failed to satisfy the court that the causes alleged against the order were sufficient to vacate it. He pleaded no inability to comply with the order, in fact from his testimony it would seem he had the $612 in the bank at the time, and his refusal to comply with the order to pay it over to the receiver can but be treated as willful, fully justifying the court in imprisoning him until he should obey.

As to the propriety of the action of the court in entering the several orders complained of, we express no opinion, as that question can not arise upon this record. If the court had jurisdiction to make the orders, the duty of the plaintiff in

error was clear, to yield a ready obedience to them until such time as he could have them reviewed by an appellate tribunal upon appeal or writ of error, which would bring their propriety before the court, and where, if erroneous, a proper corrective would be applied. As we have endeavored to show, the court had jurisdiction of the subject-matter and of the parties, and its orders should stand until reversed or set aside in a direct proceeding. The order of the court will be af-· firmed.

Order affirmed.